FAG KUGELFISCHER GEORG SCHAEFFER KGaA, Helmut Elges GmbH, Fag Cuscinetti S.p.a., and Fag Bearings Corporation, Plaintiffs,

v.

UNITED STATES of America, United States Department of Commerce, C. William Verity, Jr., Secretary of Commerce, and Jan W. Mares, Assistant Secretary for Import Administration, Defendants,

and

The Torrington Company, Defendant–Intervenors.

Court No. 88–12–00901.

United States Court of International Trade.

Jan. 6, 1989.

Grunfeld Desiderio Lebowitz & Silverman, Max F. Schutzman, New York City, and Adduci Mastriani Meeks & Schill, Louis S. Mastriani, for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Jane E. Meehan, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Douglas S. Cohen, Washington, D.C., for defendants.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Charles A. St. Charles, Washington, D.C., for defendant-intervenors.

DiCARLO, Judge:

This action is related to *SNR Roulements v. United States*, 13 CIT ——, 704 F.Supp. 1103 (1989). In addition to the arguments raised in *SNR*, FAG argues that the APO is deficient in several respects and urges the Court to redraft the APO or remand to Commerce with instructions to draft another APO.

## BACKGROUND

The facts of this case are set forth in *SNR Roulements v. United States*, 13 CIT ——, 704 F.Supp. 1103 (1989). An additional fact is that because the German and Italian producers received Commerce's notice and decision only on the morning of December 5, 1988 (with instructions to convey their consent by noon), the German and Italian producers requested an additional 72–hour period within which to advise Commerce whether they agreed to comply with the determination to release the computer tapes. Commerce granted this request for additional time.

## DISCUSSION

FAG faults the APO for (1) not requiring that the mainframe computer be purged of all other data before running FAG's data, in order to "maximize" security and avoid the possibility of comingling data from other investigations; (2) not requiring that FAG's data may not be called to a computer screen when another producer's data is also on that screen; (3) not prohibiting multiple computer terminals or their simultaneous use by nonauthorized personnel; (4) not requiring that the computer mainframe be actually located on the premises where the confidential information is to be analyzed; and (5) not containing all of the sanctions available in regulations announced at the time of the December 2, 1988 order from Commerce but which had not yet entered into effect.

### A. *"Maximum" Security*

■ The attorneys for the domestic industry are located on the same floor of the same building as their computer consultants. R. 1, at 1. In their applications, the attorneys and computer consultants agreed that (a) the computer tapes would be stored in a locked safe, vault, or cabinet in the law firm; (b) personnel of the computer consultants could only obtain the computer tapes

under supervision of an attorney also covered by the protective order; (c) when the computer consultants were not present and operating the computer to manipulate data on the computer tapes, that data would be deleted from the computer; (d) there would be no telephone modems or other means of dial-up access to the computer where the tapes were stored; and (e) at the end of each day, or sooner when not in use, the computer tapes would be returned by an attorney to the locked cabinet in the law offices. *Memorandum of the Torrington Company in Opposition to Plaintiffs' Motion for Injunctive Relief*, at 3.

As to FAG's complaints that the APO is deficient, the Court finds that its role is not to substitute its judgment for that of the agency and draft an APO with more or "maximum" security. *See Federal Communications Comm'n v. Schreiber*, 381 U.S. 279, 291, 85 S.Ct. 1459, 1468, 14 L.Ed. 2d 383 (1965); *United States Int'l Trade Comm'n v. Tenneco West*, 261 D.C.App. 341, 822 F.2d 73, 76 (D.C.Cir.1987). Rather, under the "arbitrary and capricious" standard of review, the Court's role is to determine whether the APO in this action reasonably affords the level of security contemplated by the statute.

## B. *Additional Sanctions Under New Commerce Regulations*

■ As to FAG's complaint that the APO does not contain all of the additional sanctions that are available under new Commerce regulations, the Court finds that the regulations now in effect may be applied to any future breaches of the APO under review.

Effective on December 28, 1988, Commerce regulations impose the following sanctions:

1. Barring anyone who violates an APO from appearing before the International Trade Administration to represent others;

2. Denying future access to confidential information;

3. Other administrative sanctions, including (a) striking from the record any information submitted by, or on behalf of, the violating party, and (b) terminating any proceeding in progress or revoking any order in effect; and

4. Requiring violators to return all confidential documents and all other materials containing the proprietary information.

*Procedures for Imposing Sanctions for Violation of an Antidumping or Countervailing Duty Protective Order*, 53 Fed. Reg. 47,916, 47,921 (Nov. 28, 1988) (to be codified at 19 C.F.R. § 354.3).

Unlike changes in the standards for granting access to confidential information under section 1332 of the Omnibus Trade and Competitiveness Act of 1988, P.L. 100–418, 102 Stat. 1107, 1207–08, which apply only those investigations initiated after August 23, 1988, *id.* § 1337, 102 Stat. at 1211, Commerce's new regulations are not limited to investigations that commence after their effective date, but may be applied to any breach of an APO after December 28, 1988.

## CONCLUSION

■ For the reasons in *SNR Roulements v. United States*, 13 CIT ——, 704 F.Supp. 1103 (1989), the Court finds that Commerce may determine that the attorneys' assumption of responsibility for the actions of their computer consultants can serve as part of an adequate deterrent, together with other available sanctions, against disclosure of confidential information, that the attorneys in this action demonstrated a need for the information sought and that Commerce properly balanced that need, and that Commerce's determination to release business proprietary data under the terms of the APO is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.