METALLVERKEN NEDERLAND B.V. AND OUTOKUMPU METALLVERKEN INC., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AMERICAN BRASS, ET AL. DEFENDANT-INTERVENORS

Court No. 88–09–00711

(Decided May 18, 1989)

*Winthrop, Stimson, Putnam & Roberts (Thomas V. Vakerics, Kenneth Berlin, Mark A. Monborne, James A. Meade,* and *Jomi A. Laura); Arent, Fox, Kintner, Plotkin & Kahn (Stephen L. Gibson, Callie Georgeann Pappas,* and *Jerome Akman)* for plaintiffs.
*John R. Bolton,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*M. Martha Ries*); United States International Trade Commission (*Calvin H. Cobb, III*), for defendant.
*Collier, Shannon, Rill & Scott (David A. Hartquist, Jeffrey S. Beckington,* and *Kathleen Weaver Cannon)* for defendant-intervenors.

DiCARLO, *Judge:* Plaintiffs move for clarification of the terms of a stipulation and protective order (SPO) which grants limited access to confidential business information. The issue is whether attorneys can be granted access to confidential information without formally signing the SPO. The Court finds that attorneys who have not signed the SPO are not "authorized personnel" under paragraph 6 or 7 of the SPO, and holds that each attorney given access to confidential information should sign the SPO, which will be submitted to other parties for signature and to the Court for approval.

## BACKGROUND

The attorneys at Winthrop, Stimson, Putnam & Roberts seek clarification of the terms of the SPO to determine whether attorneys who have not signed the original stipulation may gain access to confidential information by following procedures for "authorized personnel" rather than signing the SPO itself. The procedure for "authorized personnel" requires office personnel to acknowledge that the business proprietary information is confidential and promise that confidential information shall be disclosed only to authorized personnel.

The relevant portions of the SPO provide:

5. Pursuant to this stipulation and subject to [its] terms and conditions * * *, access to the [confidential] [d]ocuments is granted to the following attorneys ("Counsel") for the [p]laintiffs, * * *.

6. Counsel receiving confidential information pursuant to this order shall not disclose confidential information to anyone (including without limitation any officer, shareholder, director, or employee of any of the parties in this civil action) other than their immediate office personnel actively assisting in this litigation.

7. Counsel shall cause all personnel authorized to see confidential information, including immediate office personnel actively assisting in this litigation, to comply with the terms of this stipulation and protective order. Counsel shall cause all office personnel authorized to see confidential information to sign a statement of acknowledgement that the information is confidential and that such confidential information shall not be disclosed to anyone other than authorized personnel within their law firms.

## DISCUSSION

Antidumping and countervailing duty actions require that certain documents, comments, and information be accorded confidential status because even inadvertent disclosure of business proprietary information can be highly damaging and irreparable by conventional legal remedies. *SNR Roulements* v. *United States,* 13 CIT 1, 704 F. Supp. 1103, 1107 (1989); *Chevron U.S.A., Inc.* v. *United States,* 11 CIT 76, Slip Op. 87–13, at 6 (Feb. 6, 1987); Garfinkle, *Disclosure of Confidential Documents Under the Trade Agreements Act of 1979: A Corporate Nightmare?,* 13 Law & Pol'y Int'l Bus. 465 (1981). Release of business proprietary information to attorneys has been permitted under protective order because the sanctions for violating the order, including disbarment from practice before the United States Department of Commerce under 19 C.F.R. § 355.20(e) (1988), disbarment from practice before the United States International Trade Commission under 19 C.F.R. § 353.30(e) (1988), and the further prospect of professional disbarment, provide sufficient de-

terrence against disclosure of information submitted in confidence by foreign producers and their governments. *SNR Roulements*, 13 CIT at 4, 704 F. Supp. at 1107; *D & L Supply Co.* v. *United States*, 12 CIT 732, 693 F. Supp. 1179, 1182 (1988). Additional sanctions in recently published regulations are also available for violation of a protective order. *FAG Kugelfischer Georg Schaeffer KGaA* v. *United States*, 13 CIT 10, 704 F. Supp. 1111, 1113 (1989); *Procedures for Imposing Sanctions for Violation of an Antidumping or Countervailing Duty Protective Order*, 53 Fed. Reg. 47,916, 47,921 (Nov. 28, 1988) (to be codified at 19 C.F.R. § 354.3).

The terms of the SPO in this case contemplate that each attorney working on the case, as an officer of the Court, has a direct responsibility to the Court to assure full compliance with the protective order. At the next level of accountability, primary experts make specific promises to be bound by the SPO and to safeguard confidential information. Clerical personnel are expected only to acknowledge that the information is confidential and promise not to disclose the information is confidential and promise not to disclose the information to unauthorized persons. The SPO is structured so that counsel have primary responsibility to supervise their expert and clerical personnel.

The "authorized personnel" procedure described in paragraphs 6 and 7 of the SPO permits access to confidential information based upon a reasonable balance between the administrative burden inherent in requiring a new SPO for each clerical staff member who may come into contact with protected information, and the need to protect confidential information from unauthorized disclosure.

Counsel for the government argue that the security derived from continuing to require all attorneys to sign the stipulation and protective order outweighs the administrative burden corresponding to this process. Counsel for the government argues:

> While counsel [for plaintiff] may not know in advance which clerical personnel will be available to work on a particular case, a firm can be held to know which attorneys will staff the case and not to add lawyers who need access to confidential information on an *ad hoc* basis.
>
> Treating attorneys differently from clerical personnel has important security benefits. Attorneys are different from clerical personnel in that attorneys are expected to (i) have more extensive and intimate contact with the confidential information, and (ii) take responsibility to supervise and direct clerical personnel concerning the handling of confidential information. The more remote the relationship between the signatory of a stipulation and protective order and the clerical personnel handling the confidential information, the more tenuous becomes the link of personal responsibility and accountability to the Court, and the more likely inadequate supervision will contribute to unauthorized disclosure. Moreover, the stipulation and

protective order procedure is necessary to give other parties the opportunity to approve persons obtaining access to confidential information or notify the Court if there are reasons a certain attorney should not be given access to confidential information. Finally, to the extent the stipulation and protective order is breached, the Court's sanction power is more effective against attorneys who have signed the order.

The protection of confidential information is the paramount purpose of the stipulation and protective order process. The limited disclosure provisions are also designed to ensure the ability of Commerce and the Commission to obtain confidential information in future investigations. *See American Brass* v. *United States,* 12 CIT 1068, 699 F. Supp. 934, 938 (1988); *A. Hirsch, Inc.* v. *United States,* 11 CIT 208, 657 F. Supp. 1297, 1302 (1987). Under the terms of the SPO in this action, the Court holds that each attorney who has been or will be given access to confidential information should sign the SPO, which will be submitted to other parties for signature and to the Court for approval.

CONCLUSION

Under the terms of the SPO filed in this action, attorneys who have not signed the SPO are not subsumed under the provisions for "authorized personnel" in paragraph 6 or 7. The Court holds that each attorney who has been or will be given access to confidential information should sign the SPO, which will be submitted to other parties for signature and to the Court for approval.