# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 11, 2013          Decided July 12, 2013

No. 11-5347

UNITED STATES OF AMERICA AND JEFFREY SCHANZ,
APPELLEES

JEANNIE BARRETT, ET AL.,
APPELLANTS

v.

CALIFORNIA RURAL LEGAL ASSISTANCE, INC.,
APPELLEE

Consolidated with 11-5361, 12-5025

Appeals from the United States District Court
for the District of Columbia
(No. 1:07-mc-00123)

*Bernard A. Burk* argued the cause for appellants/cross-appellees. With him on the briefs were *Jack W. Londen*, *Wendy M. Garbers*, *Lisa Wongchenko*, *John P. Corrado*, *Martin R. Glick*, *Robert D. Hallman*, and *Philip W. Horton*. *Brian R. Matsui* entered an appearance.

*Alana H. Rotter* and *Lisa R. Jaskol* were on the brief for *amici curiae* Los Angeles County Bar Association, et al. in

support of appellants/cross-appellees.

*Melissa N. Patterson*, Attorney, U.S. Department of Justice, argued the cause for appellees/cross-appellants. With her on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Michael S. Raab*, Attorney.

Before: TATEL and KAVANAUGH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: The Inspector General of the Legal Services Corporation petitioned the district court for summary enforcement of a subpoena duces tecum to appellant California Rural Legal Assistance ("CRLA"). After extensive negotiations and hearings, the court entered an order granting enforcement of the subpoena duces tecum and entered a protective order governing disclosure of material discovered by the subpoena and also establishing a notice requirement. The CRLA appeals from the enforcement order, and the OIG cross-appeals the protective order, specifically objecting to the notice requirement set forth therein. For the reasons set forth below, we affirm the district court's order enforcing the subpoena and vacate and remand the protective order.

## I.  BACKGROUND

The Legal Services Corporation Act of 1974 ("LSC Act") created the Legal Services Corporation ("LSC"), "a private nonmembership nonprofit corporation . . . for the purpose of providing financial support for legal assistance in noncriminal proceedings or matters to persons financially unable to afford

legal assistance." 42 U.S.C. § 2996b(a). In 1978, Congress enacted the Inspector General Act, 5 U.S.C. app. 3 § 2, which created Offices of Inspector General in various federal departments and agencies "to conduct and supervise audits and investigations relating to the programs and operations of the establishments listed" in the Act. In 1988, Congress amended the Act to add several additional federal establishments, including the Legal Services Corporation, to those governed by the Act. The Office of Inspector General of the Corporation (hereinafter "OIG") is therefore empowered under the Inspector General Act to investigate fraud and abuse in the LSC. *Id.* app. 3 §§ 4 & 8G(a)(2). The Inspector General Act empowers the OIG, in carrying out its investigative functions, to "require by subpoena the production of all information, documents, reports, answers, records, accounts, papers, and other data . . . and documentary evidence necessary in the performance of [their] functions." *Id.* app. 3 § 6(a)(4). OIG subpoenas are enforceable by order of a district court. *Id.*

The LSC provides federal funding grants to state-based, nonprofit legal service providers. The CRLA is such a nonprofit grantee, providing free legal assistance to lower income communities in California. As an LSC grant recipient, the CRLA is subject to a variety of federal requirements. Further, as a grant recipient covered by such requirements, it is subject to investigation by the OIG. In 2005, the OIG received a complaint from a confidential source alleging that the CRLA was violating statutory limitations on the use of its LSC grants. The OIG undertook investigation of the allegations. On October 17, 2006, the OIG served the CRLA with a subpoena duces tecum seeking various documents and data in connection with its investigation. CRLA refused to turn over much of the information, asserting that it was privileged under federal and California law and subject to confidentiality obligations under California law.

4

The OIG filed a petition for summary enforcement of the subpoena in the district court in Washington, DC. Several CRLA attorneys intervened on behalf of the CRLA. After extensive briefing and a status hearing, the parties jointly requested that the district court resolve only "the general issue of whether, and if so, which California state privileges and protections apply." On November 3, 2011, the district court entered its order, with an accompanying opinion published as *United States v. California Rural Legal Assistance, Inc.*, 824 F. Supp. 2d 31 (D.D.C. 2011). After reviewing the course of the litigation and the provisions of federal law governing the subpoenaed materials, the district court concluded that only federal and not California state privileges and protections governed the scope of disclosure compelled under the subpoena. *Id.* at 42. CRLA appeals from the district court's order denying the applicability of California professional responsibility standards.

The district court further entered specific orders establishing protocols for discovery consistent generally with the agreement of the parties. At the request of the CRLA, and with the partial acquiescence of the LSC, the district court entered a protective order in light of the "legitimate concerns about the privacy of [CRLA's] clients' confidential information." *Id.* at 47. The OIG cross-appeals from the entry of the protective order, specifically seeking vacation of a provision requiring the OIG to provide five days' notice before making disclosure of CRLA's client information obtained through the subpoena.

For the reasons set forth below, we affirm the district court's order granting the petition for the enforcement of the subpoena and vacate the notice provision of the protective order.

## II. ANALYSIS

*A. Subpoena Enforcement*

The core of appellant's arguments against the enforcement of the OIG subpoena is the proposition that the confidentiality of information sought is protected by state law. Appellees contend that only the federal law of confidentiality and privilege limits the scope of their power to subpoena information in furtherance of their investigation.[1] While the parties discuss at some length the differences in degrees of protection afforded attorney privileges and confidentiality under California law and federal law, the details of those differences are ultimately irrelevant to our decision, and we will not burden the opinion with the specifics involved. Suffice it to say that the claimed protection under California law is broader than that afforded under federal standards as applied by the OIG and ultimately approved by the district court. The decision of this case rests not on those specifics, but rather on the general issue submitted to the district court by the parties. That is, "whether, and if so, which California state privileges and protections apply." Because the district court determined that the answer to the "whether" issue is "no," and because we affirm that holding, the "if so, which" half of the issue is no longer germane. Federal law exclusively governs.

The basic background law is clear. The Supreme Court "has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs." *United States v. Kimbell Foods,*

---

[1]Although appellants raised other questions in the district court concerning the reasonableness, burdensomeness, and relevance of the subpoena, they do not raise those arguments before us, but accept the district court's adverse ruling.

*Inc.*, 440 U.S. 715, 726 (1979). We had occasion to apply this fundamental principle in a factual and legal context parallel to the matter before us in *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508 (D.C. Cir. 1993) ("*Linde Thomson*"). That case also involved a petition by a federal agency to enforce a subpoena duces tecum. The Resolution Trust Corporation issued the subpoena in the course of an investigation. The subpoena duces tecum was directed to a law firm and sought information concerning transactions germane to the investigation of a failed savings and loan. The district court ordered enforcement of the subpoena. The recipients of the subpoena appealed, urging that the district court had erred by not applying state (Missouri) law of privilege. On appeal, we concluded that a subpoena enforcement proceeding, such as the one before the *Linde Thomson* court and the one before us, "under common sense and precedents in this circuit and elsewhere . . . rests soundly in federal law, and federal law of privilege governs any restrictions on the subpoena's scope." *Id.* at 1513 (citing *FTC v. TRW, Inc.*, 628 F.2d 207, 210–11 (D.C. Cir. 1980)). We rejected the law firm's contention that state law applied to the privileged status of the documents at issue before us in that case, and we reject CRLA's similar claim here. Both the Supreme Court and circuit law are clear on this point. Federal law and not state law governs.

Despite the *Kimbell Foods* precedent, and even in the face of the *Linde Thomson* application, CRLA insists that properly interpreted, the OIG investigation of Legal Services Corporation should be governed by state standards with respect to attorney client privilege, work product, and any similar privileges or constitutionality concerns. CRLA's argument rests on the principle followed in *American Bar Association v. FTC*, 430 F.3d 457 (D.C. Cir. 2005). That decision held that "[f]ederal law may not be interpreted to reach into areas of State sovereignty unless the language of the federal law compels the

intrusion." *Id.* at 471 (internal quotation marks omitted). CRLA notes that in *American Bar Association* we held that we would construe statutes in which the government sought to regulate in areas "traditionally the province of the states," with the guidance that "if Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Id.* at 471–72 (internal quotation marks and citations omitted). CRLA argues that following that standard of interpretation in the OIG statute, as applied to investigations of law firms, we should reach the same result we did in *American Bar Association*, that is, that the federal "intrusion" is not permitted by the statute.

There are two difficulties with CRLA's proposed method of interpretation. First, the *American Bar Association* decision dealt with the Federal Trade Commission's attempt to regulate the practice of law. CRLA draws the present investigatory line as parallel to the regulatory reach question in the earlier decision. In fact, it is not parallel. The Legal Services Corporation and its OIG are not attempting to regulate the practice of law. This case is not about any such regulation. It is about the OIG's performance of its duty under the OIG Act to "conduct, supervise, and coordinate audits and investigations relating to the programs and operations of [federal] establishment[s]." 5 U.S.C. app. 3 § 4(a)(1). The regulation of the practice of law, as considered in *American Bar Association*, is within the traditional sovereignty of the state; investigation and audit of federal programs are not.

Furthermore, even if the rule of *American Bar Association* did apply, it would change nothing. The rule of *American Bar Association* does not forbid the interpretation of federal statutes to preclude federal intrusion into areas of traditional state sovereignty. Rather, as we made clear above, federal law "may

not be interpreted to reach into areas of State sovereignty unless the language of the federal law compels the intrusion." *City of Abilene v. FCC*, 164 F.3d 49, 52 (D.C. Cir. 1999) (quoted in *American Bar Ass'n*, 430 F.3d at 471)). CRLA's difficulty is that in the present case, the language compels the intrusion. True, when "Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" *American Bar Ass'n*, 430 F.3d at 471–72 (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989)). But Congress has made abundantly clear its intention to regulate the federal programs funded through LSC according to federal and not California standards.

In support of its "clear statement" argument, CRLA forwards the language of 42 U.S.C. § 2996e(b)(3):

> The Corporation shall not . . . interfere with any attorney in carrying out his professional responsibilities to his client as established in the Canons of Ethics and the Code of Professional Responsibility of the American Bar Association (referred to collectively in this subchapter as "professional responsibilities") or abrogate as to attorneys in programs assisted under this subchapter the authority of a State or other jurisdiction to enforce the standards of professional responsibility generally applicable to attorneys in such jurisdiction. The Corporation shall ensure that activities under this subchapter are carried out in a manner consistent with attorneys' professional responsibilities.

CRLA argues that the statute's prohibition on "abrogat[ing] . . . the authority of a State or other jurisdiction to enforce the standards of professional responsibility generally applicable to attorneys in such jurisdiction" and its command that "[t]he

Corporation" "ensure that activities under this subchapter are carried out in a manner consistent with attorneys' professional responsibilities" demonstrate that state professional responsibility and confidentiality rules constrain OIG subpoenas. But in fact, that statutory language does not purport to constrain the investigatory authority of the OIG of LSC. The state is as free to continue its role of attorney supervision as it ever was. No authority of the state of California or any other entity is abrogated. The "abrogation" clause forwarded by the appellant does nothing to render the OIG's interpretation of its authority invalid under the plain statement rule.

The weakness of CRLA's argument becomes even more evident when the "abrogation" clause is held up to the light of the language of the rest of the subsection. The initial language of that subsection is to the effect that "[t]he Corporation shall not . . . interfere with any attorney in carrying out his professional responsibilities to his client as established in the Canons of Ethics and the Code of Professional Responsibility of the American Bar Association . . . ." We would remind the appellants that they do not come seeking the protection of the "Canons of Ethics and the Code of Professional Responsibility of the American Bar Association," but rather of the California state standards. Thus, § 2996e(b)(3) not only does not support their proposition, but indeed it argues against it.

In the end, we are back to the fundamental principle recognized by the Supreme Court in *Kimbell Foods* and applied by us in the subpoena context in *Linde Thomson*: "federal law governs questions involving the rights of the United States arising under nationwide federal programs." *Kimbell Foods*, 440 U.S. at 726.

*B. The Notice Requirement*

Although the district court concluded that OIG's subpoena should be enforced, it also found "that [CRLA] and the attorney-intervenors ha[d] nonetheless raised legitimate concerns about the privacy of their clients' confidential information" and issued a protective order to address those concerns. Mem. Op. 33–34, ECF No. 65, Nov. 14, 2011. OIG argues that the district court abused its discretion by adding a provision to the proposed protective order that OIG submitted, requiring OIG to give CRLA "a minimum of five days' notice in advance of all disclosures," even those "specifically authorized by Section 509(i)" to law enforcement and bar officials. *Id.* at 36.

Appellants argue eloquently for the reasonableness and need for such a notice requirement. But that is not the standard governing our review. It is well established "that it is the agencies, not the courts, which should, in the first instance, establish the procedures for safeguarding confidentiality." *FTC v. Texaco, Inc.*, 555 F.2d 862, 884 n.62 (D.C. Cir. 1977). Therefore, a district court may substantively alter confidentiality requirements imposed by an agency's protective order if it finds that the agency abused its discretion by not requiring the additional protections. As we stated in *FTC v. Owens-Corning Fiberglass Corp.*, 626 F.2d 966, 973 (D.C. Cir. 1980), when the agency does not abuse its discretion, "we must vacate the portions of the district court's order imposing further conditions on the [agency]." Otherwise put, "court[s] must focus on the adequacy of the agency's (and not the district court's) discretion regarding what is necessary to protect confidentiality." *U.S. Int'l Trade Comm'n v. Tenneco West*, 822 F.2d 73, 76 (D.C. Cir. 1987).

CRLA argues that the rule of *FTC v. Texaco* and its progeny does not govern this case because the OIG had agreed to submit

to the terms of a protective order, and in so doing abdicated its normal authority. CRLA's argument overstates the facts. The OIG did not agree to give the district court carte blanche and abide by whatever terms it chose to incorporate in a protective order. OIG had expressed a willingness to "agree in principle to the entry of a protective order," but it conditioned its willingness on the district court "not limit[ing] Petitioners' investigation and [the protective order being] consistent with the applicable statutes." Dist. Ct. Docket No. 53, at 4, Mar. 11, 2009.

The OIG submitted a proposed protective order that did not include any such notice, and it should be evident that it did not agree to the notice, so there is nothing to take this case out of the ordinary rule. Again, that rule is that the district court can enhance the confidentiality requirements imposed by the agency only if it finds that the agency abused its discretion. Here there is no such finding, and we therefore must vacate the portion of the district court's order imposing the notice requirement.

## III.  CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court summarily enforcing the investigative subpoena issued by the Office of Inspector General of the Legal Services Corporation. We vacate the order insofar as it added a five-day notice requirement to the confidentiality terms otherwise applicable.

*So ordered.*